# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08CV80-02-MU

| | |
|---|---|
| DONNIE RAY WINSTON, ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> STATE OF NORTH CAROLINA, ) <br> Respondent. ) <br> _____) | **O R D E R** |

**THIS MATTER** is before this Court upon Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254, filed February 27, 2008. For the reasons stated herein, this Petition will be summarily dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent records from Petitioner's file and the unpublished decision from the North Carolina Court of Appeals reflect that in December 2002, Petitioner was tried by a jury on the charges of trafficking in cocaine by possession and trafficking in cocaine by transportation. During the trial, the State produced evidence which tended to show that in March 2002, a person known for about 10 years to Petitioner as "Dave," whom Petitioner had not seen for eight or nine years, approached Petitioner and asked him if he wanted a free trip to Jamaica. North Carolina v. Winston, No. COA06-129, slip op. at 1 (N.C. App. Nov. 7, 2006). Petitioner accepted the offer and a few days later Dave drove him to an U.S.

Airways ticket office where Dave paid for half of Petitioner $615.00 ticket. Id. Dave also gave Petitioner a piece of luggage to use on his trip. Id.

On March 15, 2002, Dave drove Petitioner to the Charlotte-Douglas Airport, gave him $400.00 in cash, described a man whom Dave identified as "Andre," and told Petitioner to meet "Andre" upon his arrival in Jamaica. Id. Thereafter, Petitioner flew to Montego Bay, Jamaica. Id.

Upon his arrival in Jamaica, Petitioner was met at the airport by Andre and a man who was introduced as "Bodou." Id. Andre took Petitioner to a cottage and paid for those and his other living expenses during the trip. Id. During the course of his nearly two-week trip, Petitioner and his two new acquaintances spent time at his cottage consuming alcohol and smoking marijuana. Id. On at least one such occasion, Petitioner observed his acquaintances in possession of a pound quantity of marijuana. Id.

On March 27, 2002, the two men drove Petitioner to the airport for his return flight to Charlotte. Id. On their way to the airport, the men stopped at a residence where Bodou removed a shopping bag from a vehicle at the home. Id. Bodou reportedly told Petitioner that the bag contained coffee for Dave. Id. In particular, the shopping bag appeared to contain two smaller metallic looking vacuum sealed bags of coffee which were enclosed in two burlap bags and sealed with cardboard labels. Id. at 2.

Once back in Charlotte, United States Customs Inspector, Dennis Knapp, observed Petitioner as he awaited his luggage at the baggage carousel. Id. at 1. Under observation, Petitioner appeared somewhat apprehensive and confused. Id. Knapp was aware that Petitioner's tickets had been purchased with cash only days before his departure and Petitioner had not traveled abroad before. Id. Therefore, Knapp referred Petitioner to a secondary inspection checkpoint. Id. At that checkpoint, Knapp asked Petitioner routine questions about his luggage, in response to which Petitioner said that the bag belonged to him and contained some items which had been given to him in Jamaica. Id.

With Petitioner's consent, his bag was opened, at which point Knapp smelled bleach and observed that Petitioner's clothes were damp. Id. at 2. Petitioner explained that he had washed his clothes shortly before leaving Jamaica, but had not had time to dry them. Id. However, Knapp became concerned that the strong odor was being used to disguise the distinctive smell of cocaine. Id. Consequently, Knapp made a further inspection of Petitioner's bag. Id. That inspection revealed small amounts of marijuana residue along with the two metallic bags which reportedly contained only coffee. Id. Concerned about the bags' contents, Knapp x-rayed them and discovered that they contained two more plastic packages within them. Id. Knapp opened both sets of bags and found what field tests later revealed to be slightly

3

more than 1,000 grams of cocaine powder. Id.

At that point, Petitioner was arrested and placed in a holding room where he was handcuffed to a bench. Id. Agent Knapp contacted the Charlotte-Mecklenburg Police Department and, about two hours later, Detective James Beaver responded to the scene. Id. Petitioner then was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and was questioned about the incident. Id. During questioning, Petitioner related the foregoing information to Detective Beaver. Id. Petitioner also told Beaver that he previously had sold cocaine for Dave. Id.

For her part, defense counsel presented testimony from Petitioner which tended to confirm the above evidence. Id. However, Petitioner claimed that he had told Beaver that Dave paid the entire price for his ticket, not merely $300.00 of it; and that he had told Beaver that he previously had sold cocaine, not that he previously had sold cocaine for Dave. Id.

At any rate, the jury convicted Petitioner of both charges. On December 10, 2002, the Superior Court of Mecklenburg County sentenced Petitioner to a term of 175-219 months imprisonment. Petitioner did not immediately appeal either his convictions or sentence. Instead, more than 18 months after his conviction was imposed, on July 12, 2004, Petitioner filed a Petition for a Writ of Certiorari in the North Carolina Court of Appeals. The Petition alleged that Petitioner's trial attorney had failed to

4

discuss with him his right to an appeal, and that if counsel had advised him of his appellate rights, he would have chosen to appeal his case. In purported support of his Petition, Petitioner filed his own Affidavit merely alleging that he "was never allowed a direct appeal"; however, he made no mention of trial counsel's alleged failure to discuss his appellate rights with him.

The State argued that the Petition should have been denied because it was not supported by Petitioner's Affidavit; and that a conversation with Petitioner's former counsel revealed that she had discussed with Petitioner his appellate rights, but he had decided to forego an appeal in order to instead focus his efforts on making constructive use of his time in prison. Nevertheless, on July 29, 2004, the State Court of Appeals entered an Order, making no specific findings as to his allegation, but granting the Petition "for the purpose of reviewing the judgment and commitment entered . . . on 12 December 2002."

After being appointed an attorney, on or about January 26, 2006, Petitioner filed his direct appeal wherein he argued that the trial court erred: (1) in denying his motion to dismiss for insufficient evidence; (2) in allowing Detective Beaver to testify to Petitioner's admission that he previously had sold cocaine for Dave; (3) in instructing the jury, pursuant to certain pattern jury instructions concerning how they were to evaluate his

5

testimony; and that trial counsel was ineffective for having failed to object to Beaver's testimony. Winston, No. COA06-129, slip op. at 2.

After consideration, the State Court of Appeals rejected Petitioner's claims. Specifically, that Court found that the evidence sufficiently established that Petitioner knew or had reason to know that he possessed and transported a controlled substance. Id. at 4. The Court found that the trial court had not plainly erred in admitting Detective Beaver's testimony because that information was probative of Petitioner's knowledge that Dave was giving him a trip to Jamaica for the purpose of having Petitioner possess and transport a controlled substance for him, and because it was probative of Petitioner's knowledge that he, in fact, was in possession of such substances in the bag which he brought back to Charlotte. Id. at 4-5.

Moreover, the Appellate Court found that even if the trial court had plainly erred on this issue, such error did not result in a miscarriage of justice or the denial of a fair trial. Id. at 5. In addition, the Appellate Court found that the trial court had not erred in instructing the jury on the way to evaluate Petitioner's contradictory statements because the evidence included such contradictory statements and the statements were probative of several important issues in the case. Id. at 6-7. Last, the State Court of Appeals concluded that

because Beaver's testimony properly was admitted, Petitioner had failed to establish that trial counsel was ineffective for having failed to object to it. Id. at 7-8. Accordingly, Petitioner's appeal was denied upon a finding of "no error." Id. at 8. Thereafter, Petitioner's Petition for Discretionary Review was denied by the State Supreme Court. See North Carolina v. Winston, 361 N.C. 226 (2007).

On July 20, 2007, Petitioner filed a Motion for Appropriate Relief ("M.A.R.," hereafter) in the Superior Court of Mecklenburg County. There, Petitioner raised a single claim that trial counsel had been ineffective by her failure to seek the suppression of the drug evidence on the ground that it violated his Fourth, Sixth and Fourteenth Amendment rights. However, Petitioner's M.A.R. was found to be "without merit" and, therefore, denied by Order of August 9, 2007.

On September 20, 2007, Petitioner filed another Petition for a Writ of Certiorari in the State Court of Appeals, that time challenging the denial of his M.A.R. Such Petition reiterated Petitioner's claim that his constitutional rights were violated by his former trial attorney's failure to seek the suppression of the drug evidence. In addition, however, Petitioner argued that the M.A.R. Court erred in failing to grant him an evidentiary hearing on his claim. The State argued that Petitioner's claim against his trial counsel was procedurally barred because he had

7

failed to raise that claim on direct appeal though he could have done so.

In particular, the State argued that Petitioner's claim did not involve a factual predicate which would have required an evidentiary hearing; therefore, Petitioner's failure to raise his claim at his first opportunity to do so rendered the issue procedurally defaulted. Additionally, the State argued that the claim lacked merit because Agent Knapp had proper authority to conduct the search which led to the discovery of the cocaine.

On October 4, 2007, the State Appellate Court denied Petitioner's Petition without comment.

On February 27, 2008, Petitioner came to this Court with the instant Petition for a Writ of <u>Habeas Corpus</u>. Here, Peti-tioner argues that his conviction was secured by use of evidence which was obtained in violation of his constitutional rights; that he was subjected to ineffective assistance of counsel by trial counsel's failure to seek the suppression of the drug evi-dence, to timely file a direct appeal for him and to seek a continuance of his trial due to a conflict of interest which she had. Petitioner also argues that appellate counsel was ineffec-tive for his failure to raise trial counsel's ineffectiveness on direct appeal.

After conducting an initial review of this case, the under-signed found that certain of Petitioner's claims did not appear

to be fully exhausted and/or that certain of the claims were procedurally barred. Accordingly, on March 19, 2008, this Court entered an Order directing Petitioner to file a document explaining why he believed that each of his claims was properly before the Court.

To that end, on April 10, 2008, Petitioner filed a "Memorandum In Law" in response to the Court's directive. Taking his arguments out of order, Petitioner concedes that his claim that trial counsel should have sought a continuance has <u>not</u> been exhausted. Thus, Petitioner asks the Court to dismiss that claim from his Petition. Accordingly, that claim will be summarily <u>dismissed</u>.

As to the other matters about which the Court raised questions, Petitioner has failed to give a clear and concise explanation of why he believes those matters are cognizable. Nevertheless, the Court has given Petitioner the benefit of the doubt and has chosen to consider the merits of those matters. Notwithstanding that benefit, however, the Court has determined that Petitioner has failed to establish that he is entitled to any relief in this case.

## II. **ANALYSIS**

### 1. **Standard of review for habeas petitions**.

Generally speaking, the standard of review to be applied by the Court to <u>habeas</u> cases is "quite deferential to the rulings of

9

the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

Id. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch.

An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

The applicable standard of review is to be applied to "all

10

claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999). With these principles firmly in mind, this Court now directs its attention to the petitioner's claims.

### 2. **Petitioner's claim that his convictions were obtained by used of evidence which was seized in violation of his constitutional rights is baseless**.

Petitioner argues that his convictions were obtained in violation of his constitutional rights because Agent Knapp seized and opened the two sealed packages of coffee without first obtaining a warrant authorizing him to do so. However, this Court finds, to the extent that this claim was considered and rejected by virtue of the arguments raised in Petitioner's M.A.R., that the State Court's decision was not unreasonable.

First, border searches -- that is, searches of persons and property entering this Country from abroad -- have been permitted since before the adoption of the Fourth Amendment, and have been considered to be "'reasonable' by the single fact that the person or item in question had entered into our country from outside." United States v. Oriakhi, 57 F.3d 1290, 1295-96 (4th Cir. 1995) (approving border search of sealed shipping containers). To be sure, "[t]his longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless

11

'reasonable' has a history as old as the Fourth Amendment itself. United States v. Ramsey, 431 U.S. 606, 616 (1977) (generally, "searches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border . . . ."). "The sovereign must be able to conduct routine searches of persons and their effects at its borders." Oriaki, 57 F.3d at 1297; see also United States v. Thirty-seven Photographs, 402 U.S. 363, 376 (1971) (noting that "customs officials characteristically inspect luggage" and their power to do so is beyond question). Indeed, "[i]mport restrictions and searches of persons or packages at the national borders rest on different considerations and different rules of constitutional law from domestic regulations." Ramsey, 431 U.S. at 619 (internal quotation and citation omitted); see also Torres v. Com. of Puerto Rico, 442 U.S. 465, 472-73 (1979) ("By reason of that authority, it is entitled to require that whoever seeks entry must establish the right to enter and to bring into the country whatever he may carry.".

An airport search is considered the "functional equivalent of a border search" when that airport constitutes the first port of entry into the country. Almeida-Sanchez v. United States, 413 U.S. 266, 272-73 (1973) (finding the search of the passengers and cargo of an airplane arriving at St. Louis airport after non-stop flight from Mexico City was permissible under border search exception). Therefore, the luggage carried by a traveler who flies

12

into this country may be searched at random by a customs officer "no matter how great the traveler's desire to conceal the contents may be." United States v. Ross, 456 U.S. 798, 823 (1982). citing Ramsey, 431 U.S. at 616. Furthermore, courts have held that searches of closed containers and their contents can be conducted at the border without particularized suspicion under the Fourth Amendment. See United States v. Cortez-Rocha, 394 F.3d 1115, 1121 (9th Cir. 2005) (noting that "[i]n order to protect the country from the entry of drugs, weapons, explosives and unauthorized persons and things, the government must be empowered to conduct searches of containers crossing an international border."), citing Ramsey, 431 U.S. at 619-20.

Consequently, inasmuch as Petitioner had arrived on a flight which had traveled directly from Jamaica, Agent Knapp was entitled to conduct a warrantless search of Petitioner, his luggage and its closed containers pursuant to the so-called border search exception to the Fourth Amendment's warrant requirement. Moreover, the search of Petitioner and his property did not go beyond the routine in that it was not conducted in a particularly destructive manner so as to take it outside of the context of a per-se reasonable border search. See United States v. Flores-Montano, 541 U.S. 149, 155-56 (2004) (holding open the possibility that some searches of property are "so destructive" as to require particularized suspicion). In sum, therefore, the

discovery of the drugs was not made in violation of Petitioner's constitutional rights.

Further, even if this search was not authorized under border search jurisprudence, Agent Knapp still had authority to conduct the search. To be sure, the initial search of Petitioner's luggage revealed his damp, bleach-smelling clothing, the marijuana residue and the two homestyle-packaged bags. At the time of the search, Agent Knapp also was aware that Petitioner had never before traveled abroad, had purchased one or both of his tickets with cash shortly before he traveled, and had appeared to be confused and apprehensive while waiting to claim his luggage. Such information, coupled with Agent Knapp's experience, gave Knapp a reasonable suspicion, based upon articulable facts, to believe that criminal activity was afoot. See United States v. Sokolow, 490 U.S. 1, 7 (1989). Thus, Agent Knapp was entitled to conduct the x-ray search of the two bags in order to investigate the circumstances which aroused his suspicion. United States v. Place 462 U.S. 696, 706 (1983).

Once the x-ray examination revealed the additional sealed bags within the bags of coffee, Agent Knapp had probable cause to support a search of the interior bags. Because that search did not exceed the scope of any search which a magistrate judge would have authorized, Ross, 456 U.S. at 800, Petitioner simply cannot establish any violation of his Fourth Amendment rights. See also

14

Cortez-Rocha, 394 F.3d at 1121 (noting that a border search is appropriate when "the scope of the search [is] no greater than a magistrate could have authorized."). Therefore, this claim must be flatly rejected.

### 3. Petitioner's allegations that his attorneys were ineffective also are baseless.

In addition to the above Fourth Amendment claim, Petitioner alleges that his trial counsel was ineffective for having failed to file a Motion to Suppress based upon the foregoing alleged Fourth Amendment violation. Petitioner also alleges that trial counsel was ineffective for having failed to argue that Petitioner's Miranda rights were violated, and for having failed to secure a direct appeal in State court. Petitioner further alleges that appellate counsel was ineffective for having failed to challenge trial counsel's ineffectiveness on direct appeal.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865

(1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Further, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under. . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

### 1. **Failure to raise Fourth Amendment violation**.

Here, the Court already has determined that no Fourth Amendment violation occurred. Thus, neither trial nor appellate counsel could have been ineffective for having chosen not to raise any claim based upon that faulty premise.

16

## 2. **Failure to raise a Fifth Amendment claim**.

Petitioner also claims that trial counsel should have argued that his rights were violated because he was arrested and detained for two hours before his rights under Miranda were explained to him. However, Petitioner's claim of a Miranda violation also is baseless.

The rule announced in Miranda was designed to protect individuals from making statements against their interest while in custody and without having first been made aware of the potential consequence of making any such statement. Thus, Miranda warnings are required before a suspect is interrogated while in custody.

In the instant case, Petitioner does not allege or even hint that he was questioned prior to receiving any warnings. Rather, both the record and Petitioner's argument tend to show that he was arrested at about 6:20 p.m., after the discovery of the drugs; that after his arrest, Petitioner was left in a small interrogation room; that two hours later, Detective Beaver arrived, advised Petitioner of his rights and questioned him about the drugs; and that Petitioner did not make any inculpatory statements until _after_ he was advised of his rights Miranda rights. Accordingly, Petitioner's Fifth Amendment rights were not even implicated by these facts, and trial counsel could not have been ineffective for having chosen not to challenge those matters.

### 3. **Failure to appeal**.

Concerning Petitioner's claim that trial counsel was ineffective for having failed to secure a direct appeal for him. Specifically, in this Petition, Petitioner alleges that "he had notified trial counsel in writing, (3) days after the verdict, that he wanted to appeal his conviction and sentence," but counsel still failed to appeal his case. However, this assertion appears to be at odds with Petitioner's July 2004 pro-se Petition for Writ of Certiorari wherein he made no mention of any written request for an appeal. Rather, in that 2004 Petition, Petitioner suggested that he had not requested an appeal in that he claimed that he was unaware of his right to an appeal, and that he would have sought an appeal had he been aware of his right to do so. Therefore, it is not at all clear that Petitioner even can establish any deficiency in connection with this claim.

Moreover, even assuming that Petitioner can establish that counsel was deficient, his conclusory allegation of prejudice is far from compelling. That is, Petitioner merely claims that counsel's failure to pursue an appeal "caused all of [his] trial exhibits to be destroyed." However, Petitioner has not even bothered to identify those exhibits, state their importance, or explain how their absence has adversely affected him. Suffice it to say, therefore, this bare-bones assertion could not possibly support a claim for a constitutional violation. Nor can this

18

Court, as Petitioner has requested, presume prejudice under these circumstances.

Additionally, it has not escaped the Court's attention that Petitioner did, in fact, receive a full round of direct and collateral post-conviction review in the North Carolina courts; and that there is no indication that he raised any claims which were rejected on the ground that the evidence supporting such claims had been destroyed. Therefore, this claim must be rejected.

### 4. Failure to challenge trial counsel's performance.

Finally, Petitioner contends that appellate counsel was ineffective for having failed to raise on appeal trial counsel's alleged ineffectiveness. However, it goes without saying that since Petitioner has failed to show that trial counsel rendered ineffective assistance, appellate counsel could not possibly have been deficient for having chosen not challenge trial counsel's trial performance.

### III. CONCLUSION

The Court has carefully reviewed each of Petitioner's claims and determined that they all are foreclosed, either by the record, the relevant legal precedent or both. Accordingly, Petitioner's Petition must be summarily dismissed.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 is **DISMISSED** for

failure to state a claim for relief.

**SO ORDERED.**

Signed: May 22, 2008

Graham C. Mullen
United States District Judge